IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION


ANGELA COGBURN                                                          PLAINTIFF

vs.                                      Civil No. 6:06-cv-06045

MICHAEL J. ASTRUE[1]                                                   DEFENDANT
Commissioner, Social Security Administration


## MEMORANDUM OPINION

Angela Cogburn ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social

Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of

the Commissioner of the Social Security Administration ("SSA") denying her applications for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and

XVI of the Act.  The parties have consented to the jurisdiction of a magistrate judge to conduct any

and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment,

and conducting all post-judgment proceedings.  (Doc. No. 5).[2]  Pursuant to this authority, the Court

issues this memorandum opinion and orders the entry of a final judgment in this matter.

## 1. Background:

Plaintiff's applications for DIB and SSI now before this Court were protectively filed on

---

[1] Michael J. Astrue became the Social Security Commissioner on February 12, 2007.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for acting Commissioner Jo Anne B. Barnhart as the defendant in this suit.

[2] The docket numbers for this case are referenced by the designation "Doc. No."  The transcript pages for this case are referenced by the designation "Tr."

December 3, 2003.[3]  (Tr. 52, 85, 321).  These applications allege an onset date of January 31, 2002.[4] (Tr. 52-55, 321-323).  In these applications and in other documents filed with the SSA, Plaintiff alleges a disability due to a learning disorder, delayed range of cognitive functioning, seizure disorder, headaches, chronic anemia, low verbal I.Q. score, low performance I.Q. score, low full-scale I.Q. score, "starring episodes," convulsive disorder, and pregnancy.  (Tr. 90-99, 116, 120-121, 174, 194-195, 224, 226, 254, 319).  Plaintiff claims that her disabilities first bothered her the day that she was born or on March 1, 1980 and that her disabilities first caused her to be unable to work on her alleged onset date.[5]  (Tr. 91).  Notably, Plaintiff also claims in her applications that she is disabled because she "get[s] upset easy [sic] and . . . throw[s] thing[s] all over the house."  (Tr. 61).

Plaintiff's applications were initially denied on March 2, 2004 and were denied again on reconsideration on June 1, 2004.  (Tr. 31-39 , 42-44, 324-329).  Plaintiff requested an administrative hearing which was held on August 11, 2005 in Hot Springs, Arkansas.  (Tr. 45-46, 343-360).  Plaintiff was present and represented by an attorney, Rusty Byrne, at the hearing.  *Id.*  Plaintiff, Pamela Liles (Plaintiff's mother), and David Elmore (a vocational expert) testified at this hearing. *Id.*  At the time of the hearing, Plaintiff was twenty-five (25) years old, was classified as a "younger individual," and had a high-school education.  (Tr. 20, Findings 9-10, 346).

---

[3] The record indicates that Plaintiff also previously filed an application for DIB which was denied on reconsideration on August 19, 2000.  (Tr. 85).  This denied application is not before this Court.

[4] Plaintiff claims in her applications for DIB and SSI that her onset date was January 1, 2002.  (Tr. 53, 322).  However, in other documents she filed with the SSA, she claims that she first became "unable to work" on June 4, 2002.  (Tr. 91).  In her appeal brief Plaintiff claims that she has been disabled since July 20, 1996.  (Doc. No. 8, Page 16).  In order to resolve this inconsistency, the Court notes that the ALJ found that Plaintiff's onset date was January 31, 2002.  (Tr. 15).  This is also the date Plaintiff claimed as her onset date in her original applications. This Court finds that this date, January 31, 2002, is the correct onset date.

[5] Plaintiff received DIB as a minor.  The record indicates that these disability benefits were subsequently terminated in 1999 (Tr. 348), and Plaintiff began working after her disability benefits were terminated.

On February 17, 2006, the Administrative Law Judge ("ALJ") issued a written opinion.  (Tr. 11-20).  The ALJ determined that Plaintiff met the insured status requirements on her alleged onset date and continued to meet them through December 31, 2004.  (Tr. 19, Finding 1).  The ALJ determined that Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since her alleged onset date or since January 31, 2002.  (Tr. 19, Finding 2).  The ALJ found Plaintiff suffered a seizure disorder and was significantly below average in intellectual functioning.  (Tr. 19, Finding 3).  The ALJ determined these impairments were severe impairments.  *Id.*  The ALJ determined Plaintiff had a mild limitation in her activities of daily living, a moderate limitation in social functioning, and a mild limitation in concentration.  (Tr. 19, Finding 4).  The ALJ also found that Plaintiff had not experienced any extended episodes of decompensation.  *Id.*  The ALJ found Plaintiff did not have an impairment or combination of impairments listed in or medically equal to one listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"), including Listing 11.02, 11.03, and 12.05.  (Tr. 18, 20, Finding 5).

The ALJ evaluated Plaintiff's subjective complaints and determined Plaintiff's Residual Functional Capacity ("RFC").  (Tr. 20, Findings 6-7).  First, the ALJ evaluated Plaintiff's subjective complaints pursuant to Social Security Regulation ("SSR") 96-7p and *Polaski v. Heckler,* 751 F.2d 943 (8th Cir. 1984), and determined that Plaintiff's testimony and Plaintiff's mother's testimony was not fully credible.  (Tr. 20, Finding 6).  The ALJ then gave reduced weight to Plaintiff's allegations regarding her pain and limitations to the extent they affect her ability to do basic work.  (Tr. 17).  Second, the ALJ determined that Plaintiff retained the RFC  to perform " work where interpersonal contact is incidental to the work performed; tasks are learned and performed by rote with few variables and little judgment, reading or writing required; and the supervision is direct and concrete."

(Tr. 20, Finding 7).

Based upon this RFC determination, the ALJ found that Plaintiff could not perform her Past Relevant Work ("PRW"). (Tr. 20, Finding 8). Vocational Expert ("VE") David Elmore, a full-time vocational rehabilitation specialist, testified at the hearing and addressed this issue. (Tr. 48-49, 357-359). Plaintiff's PRW included only one job at CAPS, a poultry services company in Central Arkansas. (Tr. 346). While at this job, Plaintiff's job duties included going to chicken houses and giving chickens their medicine. (Tr. 92). The VE testified that Plaintiff could no longer perform this job because it involved a "moving assembly line." (Tr. 357-359).

The ALJ then determined whether Plaintiff retained the RFC to work at a different job. The ALJ asked the VE whether the following hypothetical female would be able to perform work that exists in significant numbers in the national economy:

> [A hypothetical female] in her early 20s, 12 grad[e]s of education, some Special Education, difficulty reading and writing, last work as indicated by the record, there'd be no exertional limitations, non-exertionally would have to work with seizure restrictions and mentally would be limited to performing work with interpersonal contact [that] is incidental to the work performed, to ask that to be learned and formed by [INAUDIBLE] would be variable to judgment, supervision required would be simple, direct and concrete.

(Tr. 357-358). The VE testified that this hypothetical person could perform work that exists in significant numbers in the national economy. (Tr. 358). Specifically, the VE testified that this hypothetical person could perform work as a cleaner or a housekeeper. *Id.* The VE testified that there are 409,000 such jobs nationally and 17,500 such jobs regionally. *Id.* Based upon the VE's testimony, the ALJ concluded Plaintiff was not disabled.[6] (Tr. 19, 20, Findings 11-12).

---

[6] Plaintiff claims that the ALJ did not proceed to Step 5 in his analysis and stopped his analysis at Step 4. (Doc. No. 8, Page 4). This statement is incorrect. In the present action, the ALJ proceeded to Step 5 in his analysis and found that Plaintiff could perform jobs that exist in significant numbers in the national economy.

On March 14, 2006, Plaintiff requested that the Appeals Council review the ALJ's February 17, 2006 hearing decision. (Tr. 9-10). The Appeals Council declined to review this decision, and the ALJ's disability determination became the final decision in this case. (Tr. 5-8). Subsequently, Plaintiff filed this action. (Doc. No. 1). The case was referred to the undersigned on February 20, 2007. Plaintiff and Defendant have both filed appeal briefs. (Doc. Nos. 8-9). This case is ready for decision.

## 2. **Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any SGA. *See Cox v. Apfel*, 160 F.3d 1203, 1206

(8th Cir. 1998);  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382(3)(c).  A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months.  *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation.  He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the RFC to perform his or her relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.  *See Cox,* 160 F.3d at 1206;  20 C.F.R. §§ 404.1520(a)-(f).  The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached.  *See* 20 C.F.R. §§ 404.1520, 416.920.

### 3. Discussion:

Plaintiff brings the present appeal claiming that she is mentally and physically disabled and that the ALJ's disability determination is not supported by substantial evidence.  (Doc. No. 8, Pages 1-2).  Specifically, Plaintiff claims the ALJ erred (A) in finding Plaintiff did not meet the

6

requirements of Listings 11.02, 11.03, or 12.05; (B) in discounting Plaintiff's subjective complaints based upon the fact that Plaintiff did not take her seizure medication; (C) in failing to properly consider the opinions of Plaintiff's physicians; and (D) in failing to properly consider Plaintiff's nonexertional limitations.  *Id.* at 6.  Defendant claims that the ALJ's disability determination is supported by substantial evidence.  (Doc. No. 9).  Defendant claims that Plaintiff failed to establish that she has an impairment or combination of impairments that meet the requirements of Listings 11.02, 11.03, and 12.05.  *Id.* at 5.  Defendant also claims that the ALJ did not err in discounting Plaintiff's subjective complaints and in discounting the opinions of Plaintiff's physicians.  *Id.* at 11-16.  Furthermore, Defendant argues that substantial evidence supports the ALJ's determination that Plaintiff's impairments resulted in nonexertional limitations that would not preclude all work activity.  *Id.* at 11-15.  This Court will address these arguments in order.

## A. Listings 11.02, 11.03, and 12.05

Plaintiff argues that she meets the requirements of Listings 11.02 (Epilepsy), 11.03 (Epilepsy), and 12.05 (Mental Retardation) and that the ALJ erred when he determined that she did not meet the requirements of these listings.  (Doc. No. 8, Pages 7-13).  Plaintiff claims that she meets the requirements of these listings because she suffers from a marked limitation in her activities of daily living; a marked limitation in her concentration, persistence, and pace; and repeated episodes of deterioration or decompensation in work or work-like situations.  *Id.*  Defendant claims that Plaintiff does not meet the requirements of these listings.  (Doc. No. 9, Pages 5-11).  While Defendant agrees that Plaintiff suffers from the impairments of a seizure disorder and a mild mental limitation, Defendant argues that, even though these impairments are severe, they are not sufficiently severe to meet the requirements of any of these three listings.  *Id.*  Defendant claims that Plaintiff

7

has the burden of establishing that she meets all the requirements of one of these listings and that

Plaintiff has not met her burden in this case.  *Id.*

### (1) Listing 11.02 and 11.03 (Epilepsy)

Listing 11.02 provides as follows:

> Epilepsy--convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment.

Listing 11.03 provides as follows:

> Epilepsy--nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2007).  In her appeal brief, Plaintiff claims that she meets the

requirements of these listings.  (Doc. No. 9, Pages 4, 7-13).  However, Plaintiff does not explain *how*

she meets these requirements or which records support a finding that she meets the requirements of

these listings.  *Id.*  Thus, this Court will review the transcript and the records in this case in order to

determine whether Plaintiff has provided  sufficient medical records or other documents to meet the

requirements of these listings.

As an initial matter, in order for a plaintiff to qualify under Listing 11.02 or Listing 11.03,

a plaintiff must establish that he or she has seizures that are "documented by [a] detailed description

of a typical seizure pattern."  20 C.F.R. Pt. 404, Subpt. P, App. 1.  In order to provide a record that

is considered a "detailed description," a plaintiff must provide "at least one detailed description of

8

a typical seizure. . . . [which] includes the presence or absence of aura, tongue bites, sphincter control, injuries associated with the attack, and postictal phenomena." 20 C.F.R. Pt. 404, Subpt. P, App. 1 (11.00A). The detailed description may be provided by either an individual who is not the claimant or a professional (such as a doctor). *See id.* In the present action, Plaintiff has provided several "lay" accounts from friends and relatives describing Plaintiff's seizures. (Tr. 69-84, 110-111, 153-155). The record does not appear to contain, and Plaintiff has not referenced, any account from a doctor or other professional describing Plaintiff's seizures. This Court has reviewed the "lay" accounts submitted by Plaintiff and notes that none of these accounts are sufficiently detailed to qualify as a "detailed description" under these listings. (Tr. 69-84, 110-111, 153-155). These accounts merely state that Plaintiff suffers from grand mal seizures, but they do not describe what occurs during those grand mal seizures. They do not explain what specific symptoms Plaintiff exhibits when she is suffering from these seizures. Thus, since Plaintiff has not met her burden of producing a "detailed description of a typical seizure," which is required under Listings 11.02 and 11.03, she cannot qualify under either one of these listings.

Furthermore, even if Plaintiff had provided sufficient documentation to satisfy the production requirements of Listing 11.02 and 11.03, Plaintiff would still not qualify under these listings. In order to qualify under these listings, Plaintiff must show that she suffers from seizures that are not adequately treated with medication. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2007). Plaintiff must suffer from seizures "occurring more frequently than once a month in spite of at least 3 months of prescribed treatment." *Id.* In the present action, however, Plaintiff has not established that her seizures occur this frequently when she is taking her medication. In fact, the medical records all

indicate that when Plaintiff takes her Depakote, her seizures are well-controlled.[7] (Tr. 114, 180, 274-275).  Even Plaintiff's physicians, in their letter urging an award of disability benefits, stated that Plaintiff's seizures are controlled with medication.  (Tr. 291).  Thus, based upon the forgoing, Plaintiff wholly fails to meet the requirements of Listings 11.02 and 11.03.

### (2) Listing 12.05 (Mental Retardation)

Listing 12.05 provides as follows:

Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.  The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; or

B. A valid verbal, performance, or full scale IQ of 59 or less; or

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; or

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

---

[7] Plaintiff claims that her seizures are not always well-controlled when she is taking Depakote because she cannot consistently take this medication.  For example, Plaintiff claims that when she was pregnant, she did not take her medication because it posed a risk to her child.  This argument, however, is without merit.  The record indicates that Plaintiff stopped taking her prescribed medication, Depakote, when she was pregnant because she was *afraid* that this medication may harm her unborn child.  (Tr. 191, 194).  Plaintiff's physician, however, indicated that Plaintiff could continue to take Depakote despite her pregnancy.  (Tr. 191-192, 194-195).  Dr. Stephen Chatelain even recommended "the continued use of Depakote" despite Plaintiff's pregnancy.  (Tr. 191-192).

20 C.F.R. Pt. 404, Subpt. P, App. 1.   Plaintiff has not indicated whether she claims to meet the requirements of Listing 12.05A, B, C, or D.  Based upon Plaintiff's appeal brief, Plaintiff apparently claims that she meets the requirements of Listing 12.05D.  (Doc. No. 8, Pages 8-13).  Specifically, she claims that she suffers from an I.Q. score of 60 through 70; has a marked limitation in her activities of daily living and in her concentration, persistence, and pace; and suffers from repeated episodes of deterioration or decompensation.[8]  *Id.*

Under Listing 12.05D, a plaintiff must first show that his or her verbal, performance, or full-scale I.Q. score is between 60 and 70.  The record establishes that Plaintiff probably meets this requirement.  When Plaintiff was still a minor, her verbal I.Q. score was 69, her performance I.Q. score was 89, and her full-scale I.Q. score was 76.  (Tr. 114, 121).  When Plaintiff was twenty-four (24) years old, her verbal I.Q. score was 66, her performance I.Q. score was 64, and her full-scale I.Q. score was 62.[9]  This Court assumes these tests were accurate, complete, and valid.  Thus, based upon this assumption, Plaintiff meets the I.Q. requirement of Listing 12.05D.

In addition to a low I.Q. score, Plaintiff must also establish that she suffers from a "marked" limitation in at least two out of the three categories listed above, or a marked limitation in one category out of the three categories listed above and repeated episodes of decompensation, each of extended duration.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (12.05D).  A "marked" limitation is a "more than moderate but less than extreme" limitation.  20 C.F.R. Pt. 404, Subpt. P, App. 1

---

[8] The only other section of 12.05 that may apply to Plaintiff is 12.05C.  Clearly, both 12.05A and 12.05B do not apply under the facts in this case.  Plaintiff, however, has not alleged that she has an "additional and significant work-related limitation of function," which is required by 12.05C.  Thus, this Court will only address Listing 12.05D.

[9] The record is unclear as to why Plaintiff's full-scale I.Q. score was lower than her performance and verbal I.Q. scores.  The record is also unclear as to why Plaintiff's I.Q. was reduced between the time she was a minor and the time she was twenty-four (24) years old.

(12.00C).  A marked limitation "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your [the plaintiff's] ability to function independently, appropriately, effectively, and on a sustained basis." *Id.*  The two different areas where Plaintiff claims she is markedly limited –activities of daily living and concentration, persistence, and pace–will be addressed in order.  This Court will then address whether Plaintiff suffers from repeated episodes of decompensation.

First, Plaintiff claims she is markedly limited in her ability to perform activities of daily living.  (Doc. No. 8, Pages 8-10).  "Activities of daily living" include "adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your [the plaintiff's] groom and hygiene, using telephones and directories, and using a post office."  20 C.F.R. Pt. 404, Subpt. P, App. 1 (12.00C).  A plaintiff has a marked limitation in his or her daily activities if the plaintiff would "have serious difficulty performing them [the daily activities] without direct supervision, or in a suitable manner, or on a consistent, useful, routine basis, or without interruptions or distractions."  *Id.*

Plaintiff claims she is markedly limited in her ability to perform activities of daily living because she does not have a driver's license and cannot drive, has to have her mother live next to her to assist her in performing her daily activities, forgets to take her medication, does very little cooking, and is unable to keep her house clean and organized.  (Doc. No. 8, Pages 8-10).  However, despite her claim that she is markedly limited in this area, the record indicates that Plaintiff is able to independently perform a number and a variety of daily activities.  Plaintiff testified at the administrative hearing that she takes care of her three children who are eight (8) years old, three (3) months old, and three (3) weeks old on a daily basis.  (Tr. 353).  Plaintiff testified that she is able

12

to cook and do some household chores. (Tr. 354). Plaintiff also stated in her Social Security

Disability Supplemental Interview Outline that despite her alleged disability, she is still able to bathe,

dress, shave, take care of her hair, do laundry, dishes, change sheets, iron, vacuum/sweep, take out

the trash, count change, walk for exercise or for errands, watch TV, and visit friends and relatives.

(Tr. 100-101). These findings indicate that Plaintiff is able to independently perform a number of

daily activities.

The record also does indicate, however, that Plaintiff receives assistance from her mother

in performing these daily activities and that her mother moved next door to her in order to assist her.

(Tr. 353-354). Plaintiff uses this fact in support of her argument that she is markedly limited in her

ability to perform daily activities and in support of her argument that she is disabled. However, even

though the record does contain evidence supporting a finding that Plaintiff is unable to perform daily

activities without her mother's assistance, there is substantial evidence in the record (stated above)

to support the ALJ's determination that Plaintiff is able to perform a number of daily activities

independent of her mother.[10] (Tr. 100-111). Thus, although the Plaintiff may be moderately limited

in her ability to perform daily activities, the ALJ did not err in concluding that Plaintiff is not

markedly limited in her ability to perform daily activities.

Second, Plaintiff claims she is markedly limited in her concentration, persistence, and pace.

(Doc. No. 8, Pages 10-11). According to the regulations, "concentration, persistence, or pace . . .

[refer] . . . to the ability to sustain focused attention and concentration sufficiently long to permit the

---

[10] Notably, Plaintiff's mother has not always lived next to her and has not always assisted Plaintiff in raising her children. In fact, at the time of Plaintiff's application in 2003, Plaintiff's mother lived in Monticello, Arkansas (Tr. 90) and Plaintiff was raising one child (then approximately 6 years old) without her mother's assistance. Thus, based upon this finding and other substantial evidence in the record, this Court must affirm the ALJ's determination. *See Young,* 221 F.3d at 1068.

timely and appropriate completion of tasks commonly found in work settings."  20 C.F.R. Pt. 404, Subpt. P, App. 1 (12.00C).  A plaintiff does not have a "marked" limitation based upon a specific number of tasks that a plaintiff is unable to complete.  *See id.*  Instead, a plaintiff may be "marked" based upon the "nature and overall degree of interference with function."  *Id.*  A plaintiff may have a marked limitation "in concentration, persistence, or pace if you [the plaintiff] cannot complete these tasks without extra supervision or assistance, or in accordance with quality and accuracy standards, or at a consistent pace without an unreasonable number and length of rest periods . . . ."  *Id.*

Plaintiff claims that she suffers from a marked limitation in her concentration, persistence, and pace because she has a learning disability, below average language skills, and a delayed range of cognitive functioning.  (Doc. No. 8, Page 10).  In support of her argument, Plaintiff references her evaluator's notes from October of 1996 which indicate that Plaintiff needs continual assistance in performing math and reading.  *Id.* at 11.  Plaintiff also heavily relies upon the results from her I.Q. scores and school testing to establish that she has a marked limitation in this area.  *Id.*  The school testing documents include reports from the twelfth grade where Plaintiff was testing at a first-grade level in a number of different topics.  (Tr. 122, 129-130).

After a review of this record, the hearing testimony, and Plaintiff's I.Q. scores, the record supports a finding that Plaintiff is impatient, lacks concentration, and cannot consistently complete tasks.  (Tr. 110-111, 114, 119-130, 135-141).  The record also supports a finding that Plaintiff suffers from a marked limitation in her concentration, persistence, and pace.  Furthermore, there is very little evidence in the record contrary to this finding.  Thus, this Court finds that Plaintiff may suffer from

a marked limitation in concentration, persistence, and pace.[11]

Third, Plaintiff claims that she has suffered from repeated episodes of decompensation, each of an extended duration.  (Doc. No. 8, Pages 11-13).  These "episodes" are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace."  20 C.F.R. Pt. 404, Subpt. P, App. 1 (12.00C). Plaintiff, however, has provided no support for her argument that she suffered from these "episodes." Plaintiff did not explain in her appeal brief when or how she has suffered from these "episodes." This Court has also reviewed the record in the present action, and the record does not provide support for Plaintiff's argument that she has suffered from any periods where her symptoms were exacerbated.  Thus, this Court cannot find that the ALJ erred in his determination that Plaintiff has not suffered from repeated episodes of decompensation.

Since Plaintiff may only suffer from a marked limitation in one of the categories listed above, Plaintiff does not meet the requirements of Listing 12.05D for mental retardation.  Thus, the ALJ's determination regarding this issue is supported by substantial evidence and should be affirmed.[12]

**B. Credibility Determination**

Plaintiff also claims  that the ALJ erred  in discounting her subjective complaints.  (Doc. No.

---

[11] This Court is not required to find that Plaintiff *is actually* markedly limited in this area because, as noted below, Plaintiff does not meet the other requirements of this listing and does not qualify under this listing.

[12] It should be noted that Plaintiff's consulting physician, Dr. Toma Lee, determined that Plaintiff was mentally retarded.  (Tr. 253)  This determination, however, was not necessarily based upon the proper criteria and is not binding on the SSA.  *See Ball v. Barnhart,* No. 06-1069, 2007 WL 295575, at *1 (8th Cir. January 30, 2007). Thus, the ALJ was not required to accept Dr. Toma Lee's finding and did not err in rejecting his finding under the facts in this case.

8, Pages 5-6).  Specifically, Plaintiff claims that the ALJ erred by attacking her credibility based upon the fact that she did not consistently take her seizure medication.  *Id.*  Plaintiff claims that this attack was in error because she did consistently take her seizure medication.  *Id.*  Plaintiff claims that the only times she did not take her seizure medication were when she was pregnant and when she could not afford the treatment.  *Id.*

This Court finds that the ALJ did not error in his credibility determination.  The ALJ correctly found, and Plaintiff admits, that she did not consistently take her seizure medication.  (Doc. No. 8, Pages 5-6).  In general, a plaintiff's failure to take his or her prescribed medication may indicate that the plaintiff's medical problem is not as severe as the plaintiff claims.  *See Shannon v. Carter,* 54 F.3d 484, 487 (8th Cir. 1995).  Plaintiff offers two reasons for explaining why she did not consistently take her seizure medication.  First, Plaintiff claims she did not take her seizure medication because she was pregnant, and, presumably, the seizure medication posed a risk to her unborn baby.  However, Plaintiff's fear of a risk to her unborn baby was unfounded and unreasonable.  As noted above, Plaintiff's doctors recommended to Plaintiff that she continue to take her seizure medication despite her pregnancy, finding that the risk of a seizure during pregnancy was greater than the risk posed by the seizure medication.  (Tr. 195).

Second, Plaintiff claims she did not take her seizure medication because she could not afford this medication. Plaintiff, however, has made no showing that she could not afford this medication. Her mere allegation that she could not afford this medication is not sufficient.  *See Tate v. Apfel,* 167 F.3d 1191, 1197 (8th Cir. 1999).  Plaintiff is required to make a showing that she was financially unable to purchase the medicine she was proscribed.  *See Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir. 1992).  Additionally, she needs to establish that she attempted to obtain low-cost medical

16

treatment and was denied or that she had been denied medical treatment because of her poverty.  *Id.*

Since Plaintiff did not make this showing, her failure to take her medication as prescribed should not

be excused by her claim that she could not afford the prescribed treatment.[13]

## C. Expert Opinions

Plaintiff also claims that the ALJ erred when he "ignore[d] the opinions of Claimant's

physicians and psychiatrists."  (Doc. No. 8, Page 6).  Plaintiff argues that her treating physicians

determined she was disabled due to her seizure disorder and that the ALJ erred when he failed to

follow this determination.  *Id.*  For example, a physician from Mercy Medical Clinic stated that

because of her seizures, Plaintiff "is unable to hold down any meaningful job . . . [and] needs to have

disability." (Tr. 334).  *Id.* at 14.  In many of the medical progress notes and records in the transcript,

several other doctors also recommended that Plaintiff be placed on disability, claiming that she is

disabled due to her seizures.  (Tr.  302, 308).

All of Plaintiff's doctor's recommendations were considered by this Court in reviewing the

ALJ's disability determination.  These recommendations, however, are not binding on this Court and

were not binding on the ALJ when he made his disability determination.  *See Dickerson v. Apfel,* 221

F.3d 1342, 2000 WL 559204, at *2 (8th Cir. May 9, 2000); 20 C.F.R. § 404.1527(e)(1).  An ALJ is

free to reject conclusions of any medical expert if they are inconsistent with the evidence as a whole.

*See Pierce v. Apfel,* 173 F.3d 704, 707 (8th Cir. 1999).  In the present action, several of Plaintiff's

doctors recommended that Plaintiff be placed on disability.  Most of these doctors, however, also

---

[13] In the record, there are some physician notes from St. Joseph's Mercy Medical Clinic indicating Plaintiff was attempting to obtain Depakote through an indigent program.  (Tr. 308).  There is, however, no indication in the record as to the final outcome of this request, no indication as to whether the request was properly made, and no indication as to whether Plaintiff completed the process for this request.  Thus, this physician's note is insufficient to establish that Plaintiff was financially unable to afford her medication.

noted as a part of the same medical record that Plaintiff's seizures are *controlled with medication.* (Tr. 302, 308) (emphasis added).  As stated above, even Plaintiff's treating doctors, in their letter urging an award of disability benefits, stated that Plaintiff's seizures are controlled with medication. (Tr. 291).  A disorder or medical condition that is controlled with medication is not disabling.  *See Brown v. Barnhart,* 390 F.3d 535, 540 (8th Cir. 2004).  Thus, the ALJ did not err in discounting the opinions of Plaintiff's doctors and in finding that Plaintiff was not disabled.

## D. Nonexertional Limitations

Plaintiff also claims that the ALJ erred when he failed to properly consider her nonexertional limitations.  (Doc. No. 8, Pages 15-16).  Plaintiff claims that her nonexertional limitations include a limitation on her ability to  "complete a normal work day or work week pace without interruptions or perform in a consistence [sic] pace without [an] unreasonable numbers [sic] rest treats [sic] due to her frequence of seizures and the times it [sic] recover from those seizures."[14]  (Tr. 358-359).

This Court finds that the ALJ properly considered Plaintiff's nonexertional limitations.  An ALJ is only required to consider nonexertional limitations if the ALJ finds those claimed limitations to be credible.  *See Dukes v. Barnhart,* 436 F.3d 923, 927-28 (8th Cir. 2006).  In the present action, the ALJ noted that Plaintiff suffered from "a seizure disorder and significantly subaverage intellectual functioning" which are severe impairments.  (Tr. 19, Findings 3).  However, even though the ALJ found these impairments to be severe, he did not find that Plaintiff's claimed limitations were  as severe as Plaintiff claimed.  (Tr. 357-358).

---

[14] Plaintiff also appears to complain about the ALJ's application of the Medical-Vocational Guidelines ("Grids") to this case.  (Doc. No. 8, Page 15-16).  This Court will not, however, address this argument because the ALJ did not apply the Grids to this case.  (Tr. 19).  Furthermore, Plaintiff appears to claim that the ALJ *never* discussed Plaintiff's nonexertional limitations.  (Doc. No. 8, Page 6).  The ALJ clearly did address Plaintiff's nonexertional limitations both in his opinion (Tr. 18) and in his discussion with the VE.  (Tr. 358).  Thus, this Court will also not address this argument.

18

Specifically, the ALJ analyzed Plaintiff's subjective complaints and reviewed the testimony of Plaintiff's mother in order to determine the severity of Plaintiff's impairments. (Tr. 16-19). The ALJ found that Plaintiff's subjective complaints were not fully credible based upon the fact that she did not consistently take her seizure medication, *See* Discussion 3.B, she performed a wide range and variety of daily activities, and her medical records indicate that her alleged disabilities are controlled with medication. *Id.* These findings, as more fully explained in the previous sections, are supported by the record. Thus, the ALJ did not err in discounting Plaintiff's subjective complaints. *See Woodruff v. Astrue,* No. 06-1818, 2007 WL 913854, at *1 (8th Cir. March 28, 2007); *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006). (holding that as long as the ALJ gives several valid reasons for his credibility determination, then his or her disability determination is entitled to deference). Furthermore, the ALJ did not err in discounting the testimony of Plaintiff's mother. As noted by the ALJ, Plaintiff's mother's testimony was not fully consistent with the medical record and may have been motivated by a secondary (presumably financial) gain. *See Buckner v. Apfel,* 213 F.3d 1006, 1013 (8th Cir. 2000).

## 4. Conclusion:

Based on the foregoing, the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 19th day of June, 2007**.

/s/   Barry A. Bryant

Honorable Barry A. Bryant
United States Magistrate Judge

19